# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                    PLAINTIFF, | |
| vs. | CASE NO.  20-40011-01/02-HLT |
| DALLAS SRIVISAY (01),<br>FRANCISCO VALDEZ-GARIBAY (02),<br>                    DEFENDANTS. | |

## SEALED INDICTMENT

**THE GRAND JURY CHARGES:**

AT ALL MATERIAL TIMES:

### INTRODUCTION

1.     The Gun Control Act of 1968 ("GCA"), and as later amended, includes in the definition of a firearm, "… any weapon…which will or is designed to or may readily be converted to expel a projectile by the action of an explosive…[and]…the frame or receiver of any such weapon."

2.     The National Firearms Act ("NFA") of 1934, and as later amended, is a comprehensive taxing system that regulates the manufacture, sale, and transfer of certain covered weapons, including machineguns.

3.     The term "machinegun" describes, among other things, a weapon that fires repeatedly with a single pull of the trigger.  That is, a machinegun can, with a single pull of the trigger, continue to fire ammunition so long as the trigger remains depressed and the firearm contains ammunition. Conversely, a "semi-automatic"

firearm generally describes a firearm that will fire only one round of ammunition per pull of the trigger. The NFA also incorporates into the definition of a "machinegun" the frame or receiver of any such weapon *and* any part solely, exclusively, or in conjunction with other parts, that is designed and intended to convert a weapon into a machinegun.

4.      Pursuant to the NFA, a manufacturer, importer, or dealer of covered weapons, including machineguns, must obtain designation as a special occupational taxpayer ("SOT").  SOT designation allows the person to engage in transfers of weapons covered by the NFA.

5.      A firearm covered by the NFA must be registered with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") in the National Firearms Registration and Transfer Record.

6.      To transfer possession of a NFA covered weapon for private ownership, the transfer must, among other things, be conducted by an SOT, be recorded on the National Firearms Registration and Transfer Record, and a $200 transfer tax payment must be made to the ATF.

7.      The Firearms Owners' Protection Act of 1986 ("FOPA"), and as amended, imposes additional restrictions on the private possession of machineguns.  Pursuant to FOPA, with the exception of a limited category of machineguns lawfully possessed prior to May 19, 1986, private ownership and possession of machineguns is banned.

### GLOCK SWITCHES

8.      Glock Inc., was and is an Austrian based corporation that manufactures arms and related products for private and professional use.  Glock Inc., maintains a U.S. headquarters in Smyrna, GA that oversees distribution of Glock Inc., products in the U.S.  Glock pistols available for retail sale in the U.S. in their original factory condition are not subject to the NFA registration requirements nor FOPA's machinegun ban.

9.      Glock Inc.'s, product line has and does include various semi-automatic pistol models.  Each pistol model has two essential components – the frame and the slide. The frame is a polymer-composite material that houses, *inter alia*, the trigger, magazine, and slide release and allows the operator to grip the pistol.  The slide houses, *inter alia*, the barrel, recoil spring, and firing pin assembly.    To assess the firing pin assembly, Glock pistols have a removable slide plate cover located at the rear of the slide.  The slide plate cover is easily removed with limited skill or tools.

10.     Machineguns and semi-automatic firearms share similarities in construction and operation.  When gunpowder is ignited, it turns into a rapidly expanding gas. This gas propels the bullet or projectile through the barrel.  In machineguns and semi-automatic firearms, the inertia from the gunpowder changing from a solid to a gas state and/or redirection of the gas itself through a piston or impingement system causes the firearm to cycle.  A firearm cycles when an expended round is mechanically ejected from the firearm and a new unfired round is mechanically extracted from the source of ammunition, such as a magazine, and placed into position to fire again.

11.    Glock pistols available to United States retail consumers were and are designed to function semi-automatically.  That is, the user must depress the trigger each time the user intends to discharge a round of ammunition and cause the firearm to cycle.

12.    On January 6, 1998, the United States Patent Office issued Patent Number 5,705,763.  The patent was issued for a "Fire Selector System for Selecting Between Automatic and Semi-Automatic Operation of a Gun," (hereafter "the patented device").   The patented device was and is described as an easily installed device capable of converting a semi-automatic firearm into an automatic firearm.

13.    Copies of the patented device were and are colloquially described as "Glock switches."

14.    The cycle of a Glock 19 pistol is controlled, in part, through the use of a trigger bar.  The trigger bar is mounted below the firing mechanism.  During normal operation of a factory produced Glock Model 19, the trigger bar engages the firing mechanism and prevents forward motion of the firing mechanism following trigger activation.  That is, the trigger bar, along with other internal components, limits the pistol to fire only one round of ammunition each time the trigger is depressed.

15.    A "Glock switch" is similar in construction to patented invention 5,705,763.  That is, a "Glock switch," like the patented device, applies longitudinal force on the trigger bar when activated.  Specifically, a "Glock switch" has a metal "leg" that when activated contacts the trigger bar and urges the trigger bar away from its intended purpose of contacting the firing mechanism.  As such, the trigger bar cannot prevent

forward movement of the firing mechanism following trigger activation.  The result is the "Glock switch" inhibits the function of the trigger bar of the subject weapon, thus achieving fully automatic operation.

16.    Pursuant to the NFA, a "Glock switch" constitutes a machinegun, as it is "any part designed solely, exclusively, or in conjunction with other parts, that is designed and intended to convert a weapon into a machinegun."  As such, "Glock switches" were subject to the NFA, FOPA, and were required to be registered in the National Firearms Registration and Transfer Record.

### STEN AND STEN-TYPE MACHINEGUNS

17.    STEN or STEN-type (hereafter collectively referred to as "STEN") machineguns generally refers to a family of British Submachine guns chambered in nine-millimeter and used by British and Commonwealth Forces in World War II.

18.    The STEN is a blowback operated machinegun that fires from the open bolt position with the bolt incorporating a fixed firing pin.  This means the bolt remains fixed to the rear and is released by spring pressure when the trigger is depressed. Once the trigger is depressed, the bolt closes, strips a round of ammunition from the magazine, chambers the round, and fires the round all in one motion.  So long as the trigger remains depressed, the STEN will continue to fire automatically so long as a source of ammunition remains present.

19.    Some STEN's incorporate a "trip lever" which prevents fully automatic fire. The trip lever is designed in such a way that a simple modification to it, such as bending, breaking, or cutting allows the weapon to operate automatically.

<u>**COUNT 1**</u>
<u>**CONTROLLED SUBSTANCE CONSPIRACY**</u>

20.     Paragraphs 1-19 are incorporated by reference as if fully restated.

21.     Beginning on a date unknown to the Grand Jury but before May 22, 2019, and continuing to on or after September 12, 2019, in the District of Kansas and elsewhere, the defendants,

**DALLAS SRIVISAY, and**
**FRANCISCO VALDEZ-GARIBAY,**

combined, conspired, confederated, and agreed together with each other, and with other persons known and unknown to the Grand Jury to possess with the intent to distribute and distribute mixtures and substances containing a detectable amount of marijuana, a Schedule I controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

22.     It is further alleged that the amount involved in the conspiracy attributable to each defendant as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him is less than fifty (50) kilograms in violation of Title 21, United States Code, Section 841(b)(1)(D).

23.     All in violation of Title 21, United States Code, Section 846 with reference to Title 18, United States Code, Section 2.

<u>**COUNT 2**</u>
<u>**POSSESSION WITH THE INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE**</u>

24.     Paragraphs 1-23 are incorporated by reference as if fully restated.

25.     On or about May 22, 2019, in the District of Kansas, the defendants,

**DALLAS SRIVISAY**

6

knowingly and intentionally possessed with the intent to distribute less than fifty (50) kilograms of a mixture and substance containing a detectable quantity of marijuana in violation of Title 21, United States Code, Section 841(a)(1), with reference to Title 21, United States Code, Section 841(b)(1)(D) and Title 18, United States Code, Section 2.

### COUNT 3
### POSSESSION OF A MACHINEGUN
### IN FURTHERANCE OF DRUG TRAFFICKING CRIMES

26.     Paragraphs 1-25 are incorporated by reference as if fully restated.

27.     On or about May 22, 2019, in the District of Kansas, the defendant,

**DALLAS SRIVISAY,**

knowingly and unlawfully possessed a machinegun, described as:

> **a STEN-type, nine-millimeter, open-bolt machinegun, bearing the markings "Sten M.C. MK," "LB," and "815403,"**

in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that is,

> **Conspiracy to distribute and possess with the intent to distribute mixtures and substances containing detectable quantities of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 846, as charged in Count 1;**

> **Possession with the intent to distribute a mixture and substance containing detectable quantities of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 846, as charged in Count 2;**

28.     All in violation of Title 18, United States Code, Sections 924(c)(1)(A) & (B)(ii), and Title 18, United States Code, Section 2.

<u>COUNT 4</u>
<u>POSSESSION OF FIREARMS</u>
<u>IN FURTHERANCE OF A DRUG TRAFFICKING CRIMES</u>

29.     Paragraphs 1-28 are incorporated by reference as if fully restated.

30.     On or about May 22, 2019, in the District of Kansas, the defendant,

**DALLAS SRIVISAY,**

did knowingly and intentionally possess firearms namely:

> (a)     **a JR (Just Right), model JR Carbine, 9mm, semiautomatic rifle, bearing serial number JRCV041511;**

> (b)     **an Inter Ordinance, model Sporter 7.62x39 semi automatic rifle, bearing serial number S022261;**

> (c)     **a Romarm, WASR-10,  7.62x39 semi-automatic rifle, bearing serial number 1-31669-2002;**

> (d)     **a DPMS, model A-15, 5.56 caliber semi-automatic rifle, bearing serial number F022649;**

> (e)     **a Cobra .380 caliber pistol, bearing serial number CP060098;**

> (f)     **a Glock model 17, 9mm semiautomatic pistol, bearing serial number SGN817;**

in furtherance of a drug trafficking crime for which he may be prosecuted in a court

of the United States, that is,

> **Conspiracy to distribute and possess with the intent to distribute mixtures and substances containing detectable quantities of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 846, as charged in Count 1;**

> **Possession with the intent to distribute a mixture and substance containing detectable quantities of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 846, as charged in Count 2;**

31.     All in violation to Title 18, United States Code, Section 924(c)(1)(A).

<u>**COUNT 5**</u>
<u>**UNLAWFUL POSSESSION OF MACHINEGUNS**</u>

32.     Paragraphs 1-31 are incorporated by reference as if fully restated.

33.     On or about May 22, 2019, in the District of Kansas, the defendant,

**DALLAS SRIVISAY**,

did knowingly and unlawfully possessed machineguns, namely:

> **a STEN-type, nine-millimeter, open-bolt machinegun, bearing the markings "Sten M.C. MK," "LB," and "815403," and,**

> **three (3) modified slide plate covers compatible with Glock pistols, bearing the markings "Made in AUSTRIA" and a likeness of the Glock Inc., emblem, commonly referred to as a "Glock switch"**

in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2).

<u>**COUNT 6**</u>
<u>**DISTRIBUTION OF A CONTROLLED SUBSTANCE**</u>

34.     Paragraphs 1-32 are incorporated by reference as if fully restated.

35.     On or about September 12, 2019, in the District of Kansas, the defendants,

**DALLAS SRIVISAY, and**
**FRANCISCO VALDEZ-GARIBAY,**

knowingly and intentionally distributed less than fifty (50) kilograms of a mixture and substance containing a detectable quantity of marijuana in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(D).

36.     It is further alleged that the distribution occurred in, on, and within 1000 feet of the real property comprising Manhattan High School, West Campus, Manhattan, Kansas, a public secondary school in violation of Title 21, United States Code, Section 860.

37.     All of the foregoing with reference to Title 18, United States Code, Section 2.

### OR, IN THE ALTERNATIVE,

### COUNT 7
### ATTEMPTED DISTRIBUTION OF A CONTROLLED SUBSTANCE

38.     Paragraphs 1-37 are incorporated by reference as if fully restated.

39.     On or about September 12, 2019, in the District of Kansas, the defendants,

**DALLAS SRIVISAY, and**
**FRANCISCO VALDEZ-GARIBAY,**

knowingly and intentionally attempted to distribute less than fifty (50) kilograms of

a mixture and substance containing a detectable quantity of marijuana in violation

of Title 21, United States Code, Section 841(a)(1).

40.     It is further alleged that the attempted distribution occurred in, on, and within

1000 feet of the real property comprising Manhattan High School, West Campus,

Manhattan, Kansas, a public secondary school in violation of Title 21, United States

Code, Section 860.

41.     All in violation of Title 21, United States Code, Section 846, with reference to

Title 21, United States Code, Section 841(b)(1)(D), and Title18, United States Code

Section 2.


### COUNT 8
### DISCHARGE, BRANDISH, AND POSSESSION OF A FIREARM
### IN FURTHERANCE OF A DRUG TRAFFICKING CRIME

42.     Paragraphs 1-40 are incorporated by reference as if fully restated.

43.     On or about September 12, 2019, in the District of Kansas, the defendant,

**DALLAS SRIVISAY,**

did knowingly and intentionally possess, brandish, and discharge a firearm namely:

**a Glock, model 17, nine-millimeter pistol, bearing serial number BSM011US**;

in furtherance of a drug trafficking crime for which he may be prosecuted in a court

of the United States, that is,

> **Conspiracy to distribute and possess with the intent to distribute mixtures and substances containing detectable quantities of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846, as charged in Count 1;**

> **Distribution of a mixture and substance containing detectable quantities of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 860, as charged in Count 6, and attempted distribution of a mixture and substance containing a detectable quantity of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 846 as charged in the alternative in Count 7;**

in violation of Title 18, United States Code, Sections 924 (c)(1)(A) and 924 (c)(1)(A)(i), (ii), & (iii).

## COUNT 9
### ACCESSORY AFTER THE FACT – DISCHARGE, BRANDISH, AND POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME –

44.    Paragraphs 1-42 are incorporated by reference as if fully restated.

45.    On or about September 12, 2019, in the District of Kansas, the defendant,

**FRANCISCO VALDEZ-GARIBAY,**

knowing that an offense against the United States had been committed, namely:

> **Possession, Brandishing, and Discharge of a Firearm in Furtherance of a Drug Trafficking Crime, as Charged in Count 8,**

did receive, relieve, comfort, and assist the offender, **DALLAS SRIVISAY**, in order to hinder and prevent the offender's apprehension in violation of Title 18, United States Code, Section 3.

## COUNT 10
### DISCHARGING A FIREARM ON SCHOOL PROPERTY

46.     Paragraphs 1-44 are incorporated by reference as if fully restated.

47.     On or about September 12, 2019,  in the  District of Kansas, the defendant,

**DALLAS SRIVISAY,**

knowingly and with reckless disregard for the safety of another discharged  a firearm, namely:

> **a Glock, model 17, nine-millimeter pistol, bearing serial number BSM011US**;

that had moved in  interstate and foreign commerce, on the grounds of Manhattan High School (West Campus), Manhattan, Kansas, a place that the defendant knew and had reasonable cause to believe was a school zone, in violation of Title 18, United States Code, Sections 922(q)(3)(A) and 924(a)(4).

## COUNT 11
### ACCESSORY AFTER THE FACT — DISCHARGING A FIREARM ON SCHOOL PROPERTY

48.     Paragraphs 1-45 are incorporated by reference as if fully restated.

49.     On or about September 12, 2019, in the District of Kansas, the defendant,

## FRANCISCO VALDEZ-GARIBAY,

knowing that an offense against the United States had been committed, namely:

**Discharging a Firearm on School Property, as Charged in Count 10,**

did receive, relieve, comfort, and assist the offender, **DALLAS SRIVISAY**, in order to hinder and prevent the offender's apprehension in violation of Title 18, United States Code, Section 3.

## FORFEITURE ALLEGATIONS

50.    Paragraphs 1-49 are incorporated by reference as if fully restated.

51.    The allegations contained in Counts 1-11 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c).

52.    Upon conviction of the offense alleged in Count 3, 4, or 5, the defendant,

### DALLAS SRIVISAY,

shall forfeit to the United States of America any firearms or ammunition used in the commission of the offense in Count 3, 4, or 5.  The property to be forfeited includes, but is not limited to:

a.    **a STEN-type, nine-millimeter, open-bolt machinegun, bearing the markings "Sten M.C. MK," "LB," and "815403;"**

b.    **three (3) modified slide plate covers compatible with Glock pistols, bearing the markings "Made in AUSTRIA" and a likeness of the Glock Inc., emblem, commonly referred to as a "Glock switch;"**

c.    **a JR (Just Right), model JR Carbine, 9mm, semiautomatic rifle, bearing serial number JRCV041511;**

    d.    **an Inter Ordinance, model Sporter 7.62x39 semi-automatic rifle, bearing serial number S022261;**

    e.    **a Romarm, WASR-10, 7.62x39 semi-automatic rifle, bearing serial number 1-31669-2002;**

    f.    **a DPMS, model A-15, 5.56 caliber semi-automatic rifle, bearing serial number F022649;**

    g.    **a Cobra .380 caliber pistol, bearing serial number CP060098;**

    h.    **Glock model 17, 9mm semiautomatic pistol, bearing serial number SGN817;**

and any accompanying ammunition.

53.    Upon conviction of the offense alleged in Counts 8 or 10, the defendant,

**DALLAS SRIVISAY,**

shall forfeit to the United States of America any firearms or ammunition used in the commission of the offense in Count 8 or 10.   The property to be forfeited includes, but is not limited to **a Glock, model 17, nine-millimeter pistol, bearing serial number BSM011US** and any accompanying ammunition.

54.    If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

**A TRUE BILL.**

February 5,  2020
DATE

*s/Foreperson*
FOREPERSON OF THE GRAND JURY

 Skipper  Jacobs  #26848
for Stephen R. McAllister, #15845
UNITED STATES ATTORNEY
DISTRICT OF KANSAS
444 SE Quincy, Suite 290
Topeka, KS 66683
Phone: (785) 295-2850
Fax: (785) 295-2853
Stephen.mcallister@usdoj.gov

**[It is requested that trial be held in Topeka, Kansas.]**

## PENALTIES

### COUNTS 1 AND 2 (SRIVISAY AND VALDEZ-GARIBAY)

Punishable by a term of imprisonment of not more than 5 years, a fine of not more than $250,000, supervised release of not less than 2 years, and a $100 special assessment per count of conviction.

21 USC 841(b)(1)(D)

### COUNT 3 (SRIVISAY)

Punishable by a term of imprisonment of not less than 30 years nor more than life, such term of imprisonment to be served consecutive to any additional term of imprisonment imposed, a fine of not more than 250,000 dollars, supervised release of not more than 5 years, and a $100 special assessment per count of conviction.

18 USC 924(c)(1)(B)

### COUNT 4 (SRIVISAY)

Punishable by a term of imprisonment of not less than 5 years nor more than life, such term of imprisonment to be served consecutive to any additional term of imprisonment imposed, a fine of not more than 250,000 dollars, supervised release of not more than 5 years, and a $100 special assessment per count of conviction.

18 USC 924(c)(1)(A)

### COUNT 5 (SRIVISAY)

Punishable by a term of imprisonment of not more than 10 years, a fine of not more than 250,000 dollars, supervised release of not more than 3 years, and a $100 special assessment per count of conviction.

18 USC 924(a)(2)

### Counts 6 and 7 (SRIVISAY AND VALDEZ-GARIBAY)

Punishable by a term of imprisonment on not less and one (1) nor more than 10 years, a fine of not more than $500,000, supervised release of not less than 4 years, and a $100 special assessment per count of conviction.

## COUNT 8 (SRIVISAY)

Punishable by a term of imprisonment of not less than 5 years nor more than life if the firearm was possessed;

Punishable by a term of imprisonment of not less than 7 years nor more than life if the firearm was brandished;

Punishable by a term of imprisonment of not less than 10 years nor more than life if the firearm was discharged;

such term of imprisonment to be served consecutive to any additional term of imprisonment imposed, a fine of not more than $250,000 dollars, supervised release of not more than 5 years, and a $100 special assessment per count of conviction.

18 U.S.C. 924(c)(1)(A)

## COUNT 9 (VALDEZ-GARIBAY)

Punishable by a term of imprisonment of not more than 15 years, a fine of not more than $125,000 dollars, supervised release of not more than 2 1/2 years, and a $100 special assessment per count of conviction.

## COUNT 10 (SRIVISAY)

Punishable by a term of imprisonment of not more than 5 years, such term of imprisonment to be served concurrent to any other term of imprisonment, a fine of not more than $100,000, supervised release of not more than 1 year, and $25 special assessment per count of conviction.

## COUNT 11 (VALDEZ-GARIBAY)

Punishable by a term of imprisonment of not more than 2 1/2 years, such term of imprisonment to be served concurrent to any other term of imprisonment, a fine of not more than $50,000, supervised release of not more than 1 year, and $25 special assessment per count of conviction.